Antonio Román Benítez et ux., Plaintiffs and Appellants-Appellees, *v.* Francisca Rivera Gómez et al., Defendants and Appellees-Appellants.

No. 5680. Argued April 27, 1932.—Decided May 26, 1932.

514

R. H. *Blondet* for appellants-appellees. *Juan de Guzmán Benítez* for appellees-appellants.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the Court.

On October 28, 1921, Antonio Román Benítez and his wife Ramona Dávila constituted a mortgage on a property belonging to them, in favor of Francisco Rivera Colón, to secure a loan of $8,000 for a term of two years that would expire on October 28, 1923. The interest was fixed at 12 per cent per annum until the final payment of the loan, and the sum of $800 was stipulated for costs and attorney's fees.

On January 16, 1923, Francisco Rivera brought a summary foreclosure proceeding against Antonio Román Benítez to collect his mortgage credit, together with costs and monthly instalments due. A writ demanding payment (*requerimiento*) was issued against the mortgage debtor, and in the marshal's return it was stated that, in the absence of Antonio Román Benítez from his home, that officer had demanded payment of the debt, together with interest thereon, costs, and monthly instalments due, from him through his sister Miss María Román, residing at the same house, by personally delivering to her copies of the writ and of the other documents attached to the proceedings by the plaintiff. Francisco Rivera Colón died on May 21, 1926, after instituting the defendant, Francisca Rivera Gómez, as his only heir. The property, the object of this action, was mortgaged by Francisca Rivera Gómez and her husband, Rafael Rivera Oyola, in favor of Lo-

renzo Alois Bennazar and his wife, Mercedes Pont Zayas, to secure the sum of $5,000.

Prayer was made by the plaintiffs herein, Antonio Román Benítez and his wife, that the foreclosure proceeding brought by defendants' predecessor in interest be set aside on the ground that the proceeding was null and void because the writ demanding payment was never legally served on the defendant therein. They further prayed that the property be restored to them and that the defendants be adjudged to pay to them the rents yielded or which should have been yielded by the property, at the rate of $156 monthly, from the date on which plaintiffs were illegally deprived of the possession of the property until the same should be restored to them.

Besides their answer opposing the complaint, the defendants filed a cross complaint praying, in the event the complaint should be sustained, for restitution of the mortgage loan of $8,000, together with interest thereon until fully paid, and reimbursement for all expenditures incurred for taxes, water consumed, repairs, and any improvement or rebuilding made by the defendant and cross complainant, Rafael Rivera Oyola, on any of the houses located on the property.

The lower court rendered a judgment sustaining the complaint and adjudging the defendants to restore to the plaintiffs the property claimed, together with the fruits thereof, yielded or which should have been yielded, estimated at the rate of $60 monthly, from the date on which the plaintiffs were deprived of the possession of the property, that is from April 4, 1923, to the date of restoration to the plaintiffs; and it further ordered that the property should be restored free from the mortgage amounting to $5,000 constituted by the defendants Rivera in favor of Lorenzo Alois, and, in default thereof, that said defendants should pay to the plaintiffs the amount of said mortgage plus any interest which might be owing on the date of such restoration.

The court also sustained the cross complaint and adjudged the plaintiffs, as a condition precedent to the recovery of the

property, to pay to the defendant Francisca Rivera Gómez the principal of the mortgage loan, or $8,000, and interest thereon at the rate of 12 per cent per annum, from March 29, 1922, until final payment. It further adjudged the plaintiffs to reimburse that defendant the sum of $1,200.77, paid by her as taxes, from the year 1923 to 1929, and $269.72 paid by said defendant for the water consumed in the premises, plus $255.83 paid by her as premiums on a fire insurance policy covering the property in question. Lastly, the plaintiffs were adjudged to pay to the defendant, Rafael Rivera Oyola, the sum of $2,021.40 as the value of the improvements he made on one of the tenement houses located on the property.

Both parties herein appealed from the judgment of the lower court. The defendants and cross-complainants have assigned five errors which we shall examine in their order.

It is urged, in the first place, that the court erred in dismissing the special defense of the defendants setting up that the action was barred under subdivision 2 of section 1868, and sections 1802 and 1803 of the Civil Code (1930 ed.). We do not agree with this contention of counsel for the defendants. The plaintiffs have not exercised a subsidiary action for damages. The nullity of the foreclosure proceeding brought by the ancestor of the defendant Francisca Rivera Gómez, and the restitution of the property together with the fruits which it yielded or should have yielded, were prayed for. The fundamental action exercised by the plaintiffs is an action of revendication based on the nullity or inexistence of the defendants' title.

In *Carmona et al.* v. *Cuesta*, 20 P.R.R. 250, this Supreme Court established the distinction existing between the primary action for damages arising from fault or negligence and the subsidiary action for damages recoverable where an action of revendication would be ineffectual. According to section 354 of the Civil Code, the owner has a right of action

against the holder and the possessor of the thing to recover the same.

The plaintiff, Román Benítez, is exercising in this case the right granted to him by the law to recover a piece of property of whose ownership he has been wrongfully deprived. It is alleged in the complaint that the formal demand for payment in the foreclosure proceeding was never lawfully served on the defendant therein, and hence that said proceeding was null and void. The lower court, therefore, did not err in dismissing the special defense of prescription set up by the defendants.

The second and third errors are predicated on the failure of the court to sustain the demurrer for insufficiency, and on its having decreed the nullity of the foreclosure proceeding on the ground that the writ demanding payment was not properly served on Antonio Román Benítez, the defendant in said proceeding. The nullity of the proceeding clearly appears from the return of service made by the marshal, who went to the residence of Antonio Román Benítez and, in the absence of the latter, served the demand for payment through his sister Miss María Román, to whom the officer delivered copies of the writ and the other documents attached to the proceeding by the plaintiff therein. As regards the domicile and residence of Antonio Román Benítez, the lower court expressed itself thus:

"According to the evidence introduced in this case, it appears that the habitual and permanent residence of the then defendant Román was in Loíza Street, Santurce; that in or about January, 1923, due to illness on the part of his son, he removed with his family to Yabucoa, but he continued to visit, weekly, his house in Loíza Street, and was engaged in some construction work in Santurce. In March of the same year, he returned with his family to his residence in Santurce. From the marshal's return it appears that the formal demand for payment is absolutely null and void, as the return shows in its face that on February 2, 1923, the marshal went to said defendant's residence and, while Antonio Román Benítez was absent therefrom, he served the demand on defendant's sister Miss María Román;

but it does not appear that Miss · Román was in charge of the estate in any legal capacity whatsoever, as required by article 171 of the Mortgage Law Regulations, and the only relationship existing between María Román and Antonio Román Benítez is that of brothers.''

In accordance with the second paragraph of section 128 of the Mortgage Law, demand for payment shall be made on the debtor if he resides in the place where the estate is located and if his domicile be known; otherwise it shall be sufficient to make demand upon the person who may be in charge of the estate in any legal capacity whatsoever, in order that he may advise the owner of the demand. The Mortgage Law has in contemplation a notice to the owner of the property if he lives in the jurisdiction, or if not, to the person who is found in some legal capacity on the property. *Mestre et al.,* v. *Michelena et al.,* 30 P.R.R. 142.

According to article 103 of the Spanish Regulations for the execution of the Mortgage Law, demand for payment shall be made on the debtor or the third possessor of the mortgaged properties, in the ordinary form, with the intervention of a notary, or by judicial order, whatever may be the amount of the mortgaged estates.

Commenting on this article of the Regulations, Galindo and Escosura say in their Commentaries on the Mortgage Law, vol. 3, p. 295:

''When the debtor cannot be found at his residence, a demand made through a notary is considered as ineffectual: we think that personal service thereof is required. If it is made through an actuary, the rules regarding service of process, prescribed in section 3, title 6, book 1, of the Law of Civil Procedure, shall be followed. Section 275 of the Spanish Law of Civil Procedure provides that demands for payment shall be made by serving on the party, in the manner provided, the writ wherein such demand is ordered, and it must appear from the actuary's return that he has served on such party the demand for payment ordered.''

In the instant case, the mortgage debtor resided in the same place where the property was located, and he was ab-

sent only for a few days. The demand for payment should have been served on him at his domicile in conformity with article 171 of the Mortgage Law Regulations. This demand should have been personally served, and hence we think that, inasmuch as Antonio Román Benítez was not personally served with the demand for payment, the entire summary foreclosure proceeding was rendered null and void, the court being without jurisdiction to entertain the same.

The fourth assignment is that the court erred in taking as a basis the testimony of the witness Ramón Contrera Puig in order to adjudge the defendants to pay to the plaintiffs the rents and profits estimated at $60 monthly.

Both parties considered the estimate thus made by the lower court as erroneous, but they are both wrong on this point. The defendants say that the court believed the statements made to the marshal by one of the tenants of the property. The plaintiffs, on the contrary, say that in fixing the amount of the rents the court disregarded the amounts stated in the marshal's return. The truth is that the court did not base its conclusion on what the marshal set forth in his return of service. Any statement entered by the marshal in the foreclosure proceeding, in the absence of the defendant therein, cannot be considered in evidence in this case. The court *a quo* could not have taken as a basis what one of the tenants may have stated to the marshal, because it does not appear from the record that said officer received his information from the tenants of the property. The court based itself on the testimony of Ramón Contrera Puig, who stated under oath at the trial that the tenements in which he lived rented for $30 each. This is the only evidence introduced as to the rent of the tenements and the court believed it, without committing the error assigned by the litigants in this case.

The defendants finally urge that the court erred in so far as it sustained the complaint and adjudged the defendants to restore to the plaintiffs the property referred to in the com-

plaint, together with the fruits thereof yielded or which should have been yielded, namely, $60 monthly from April 4, 1923, the day on which the plaintiffs were deprived of that possession, to the date of restoration of the property. Counsel for the defendants does not offer any argument in support of this contention. We do not think that the court *a quo* erred in fixing the amount at $60 monthly, as this finding is supported by the evidence introduced; but we are of the opinion, indeed, that the defendants should not have been adjudged to pay that sum from the date mentioned to the date on which the property should be restored to the plaintiffs. According to section 371 of our Civil Code (1930 ed.), the successor by hereditary title shall not suffer the consequences of a wrongful possession on the part of the decedent, unless it is proved that he had knowledge of the faults affecting it; but the effects of possession in good faith shall benefit him only from the date of the death of the ancestor. No evidence has been adduced to show that the heir Francisca Rivera Gómez had knowledge of the faults affecting her title. Therefore, the *bona fide* character of her possession from the date on which the death of her ancestor occurred, can not be questioned. Francisco Rivera Colón died on May 21, 1926. From that date until the moment the defendant Francisca Rivera Gómez was served with the summons in the action, she was a possessor in good faith, and she can not be adjudged to pay the civil fruits during the period in which she was protected by the good faith of her possession. Such good faith ceased to exist from the moment the defendants herein were notified of the complaint, wherein the defects affecting the title under which they possessed are set forth.

The plaintiffs and cross-defendants have assigned eight errors. In the first of these assignments it is claimed that the district court erred in estimating at $60 monthly the fruits yielded or which should have been yielded by the property, and that the court acted with partiality in this respect,

as the total amount of the fruits yielded or which should have been yielded appeared from the return made by the marshal upon serving the demand on the tenants occupying plaintiffs' houses at the time the defendants attached the rents thereof in order to seize the same, as they did. We dismiss this error for the same reason that we rejected the fourth error assigned by the defendants and cross-complainants. The defendants further state that the witness Ramón Contrera Puig had testified as to the existence of a number of lots in the property, adding that there were some persons who had sought to lease them from Román Benítez. The same witness stated that he did not see that any lot was leased.

José López, a witness for the plaintiffs, testified that the property of Román Benítez was not then, nor is now, suitable for division into lots.

Juan A. Román, a witness for the defendants, testified that Román Benítez had intended to urbanize the land, that he never accomplished this purpose, that there were no lots laid out, and that witness knew of no person who offered to buy any lot. Melitón Verdejo, also a witness for the defendants, stated that the land contained three lots, and that the remaining portion thereof was very seldom used, as it was swampy; that Román Benítez himself never conditioned the land which had to be refilled in order to build thereon. Juan B. Aranda testified that there were no building lots and that the land was never urbanized. With this evidence before it, the trial court could not fix any amount as rent for these lots, situated in a piece of property which was never urbanized and where the said lots were not prepared for building thereon.

Testimony was given at the trial to the effect that there were three tenement houses on the property. The witness Juan A. Román, testifying for the defendants, stated that the center tenement house was almost in ruins: one half of it

was roofless, and the other half had to be torn down; that the building lay inclined for two or three months, until Mr. Granado, the administrator of Francisco Rivera Colón, ordered it to be torn down. Melitón Verdejo testified that there are now only two tenements, as the eastern portion of one of the structures fell down soon after Román took charge of the premises, and shortly thereafter, when Don Paco came, the rest of the building collapsed and Don Paco had it completely demolished. The defendant Rafael Rivera Oyola testified that when his wife took possession of those houses, they were in fairly good condition, due to the fact that they had been repaired by Francisco Rivera Colón, that is, by his administrator Granado, and that at the time Francisco Rivera Colón acquired them they were in very bad condition. Based on this evidence, the lower court made the finding that one of the tenements was in a ruinous condition and had to be torn down. After carefully examining all the evidence introduced regarding said tenement house, we agree with that finding; but even if it had been shown that the tearing down of this structure was unnecessary, there is no evidence whatever in the record as to the rent yielded, which would have enabled the trial court to fix the amount as the fruits that might have been produced. As we have said, the only evidence existing is the testimony of Ramón Contrera Puig to the effect that the two tenement houses in which he lived rented for $30 each.

The second error assigned by the plaintiffs is based on the fact that the court considered Rafael Rivera Oyola as a third person who built in good faith on the land inherited by his wife. Evidence, which stands uncontradicted, was adduced at the trial to show that the defendant's husband built a second story on one of the tenement houses, and that the cost of this work amounted to $2,021.40. There is involved an improvement or useful expense which should be reimbursed by the owner. This construction was made af-

ter the death of the ancestor, Francisco Rivera Colón. According to section 382 of the Civil Code (1930 ed.), useful expenditures shall be paid to the possessor in good faith, and the person who has defeated him in his possession has the option to refund the amount of such expenditures or to pay him the increase in value which the thing has acquired by reason thereof. And no evidence whatsoever was adduced as to any increase in value which the tenement house may have acquired by reason of said improvement. At the time such building was erected, the defendants Francisca Rivera Gómez and Rafael Rivera Oyola were possessors in good faith, as we have shown in deciding the fifth error assigned by the defendants and cross-complainants. We are of opinion that the owners are bound to pay the total amount of such expenditure since they failed to offer any evidence regarding the increase in value acquired by said tenement which would have enabled them to exercise the option of refunding such expenditures or paying the increase in the value of the thing.

By the third assignment the plaintiffs claim that the District Court of San Juan erred in permitting the defendants, after the case was closed, to introduce in evidence a mortgage deed, and in crediting the defendants with the interest shown by said deed to be due, without affording plaintiffs an opportunity to set up the proper objections in accordance with the law. The procedure followed by the lower court seems strange to us, in the first place, because there was involved a fact already sufficiently proved, which did not call for additional evidence; and, in the second place, because after the trial of a case, evidence should not be admitted, unless the case is reopened for further evidence. The truth is that the plaintiffs alleged in the fourth paragraph of the complaint that Antonio Román Benítez bound himself to pay to the mortgage creditor the sum of $8,000 within a period of 2 years, with interest thereon at the rate of 12 per cent per

annum, payable in monthly instalments at the end of each month until final payment of the principal amount; and this fact was expressly admitted by the defendants, who also mentioned in their cross complaint the loan of $8,000 as drawing interest at 12 per cent per annum until payment of the debt. The plaintiffs and cross-defendants expressly admitted this averment. The amount of the contracted loan and the stipulation for interest at the rate of 12 per cent per annum, payable in monthly instalments at the end of each month, appear from the certificates of the registry of property. We are at a loss to understand the reason for the action of the court in admitting in evidence, after the case was heard, the deed wherein the conditions of the mortgage were set forth; and likewise we fail to understand the attitude of the plaintiffs in objecting to the admission of a document which could not prejudice them in the least, since the plaintiffs themselves had admitted that they were bound to pay interest at the rate of 12 per cent per annum on the loan of $8,000 until the same was paid.

Now, this agreement can not have the effect of binding the plaintiffs to pay interest while they were deprived of the fruits of the realty. The mortgage was constituted to secure the loan of $8,000. When the mortgage creditor took possession of the property, he seized the security, he appropriated this security to his own use, and it does not seem fair that the plaintiffs should be compelled to pay the defendants interest on a sum that the latter have practically had in their possession, while receiving the fruits of the property. The doctrine of just compensation must prevail in the present case. The defendants can not be entitled to receive the interest and the fruits at the same time. Of course, this principle is to be applied during possession in good faith, which enables the possessor to receive the fruits; but not during possession in bad faith, which deprives the possessor of such fruits.

The fourth error assigned by the plaintiffs is identical with the second one, as it is based on the fact that the court considered the defendant's husband, Rafael Rivera Oyola, as a third person.

The fifth error is predicated on the finding of the court as to the ruinous condition of one of the tenement houses. We have already decided this point in discussing the first error.

The sixth assignment is similar to the first one, but it is urged therein that the court erred in holding as conclusive the testimony of Ramón Cartagena as to the rent yielded or which should have been yielded by the tenements, and in estimating the same at $60. The fact must be stated that it does not appear from the record that any person by the name of Ramón Cartagena appeared as a witness. Ramón Contrera Puig was the only person to testify regarding the rent of the tenement houses. If such houses rented for more than $60 a month, then plaintiffs should have produced evidence to that effect and should not have relied on the return of the marshal, who did not testify at the trial, and whose statements, made in the absence of the defendants, can not be considered as evidence against the latter. For lack of other evidence, the lower court, in order to ascertain the rent, took as a basis the testimony of Ramón Contrera Puig, who was one of the witnesses testifying for the plaintiffs and who furnished the only evidence as to the amount of the rent.

The seventh assignment is merely a reiteration of the second, third, and fourth assignments.

It is finally urged that the District Court of San Juan erred in adjudging each party to pay its own costs. The court a quo, in the exercise of its discretion, held that costs should not be awarded to any of the parties, and in view of the character of the action we think that we ought to accept without modification this conclusion of the trial court.

The lower court adjudged the plaintiffs to pay to the defendants the sum of $269.72, expended for water consumed

in the premises. This amount includes the water consumed from March, 1923, to March, 1926, and from the latter date to the month of August in 1930. The *bona fide* possession of the defendants began on May 21, 1926, when defendants' predecessor in interest, Francisco Rivera Colón, died, and terminated on the day when they were served with the summons in the action herein. The expenditures incurred for water consumed during that period are a proper charge upon the defendants alone. The receiver of civil fruits bears the obligation to pay the expenses incurred in their production, gathering, and preservation. It is neither just nor equitable that the possessor should enrich himself at the expense of the owner, and were we to compel the latter to pay the water expenditures, we would be placing the possessor in the unfairly advantageous position of receiving the profits and, in addition, compensation for the expenses incurred by him in their production.

As regards the possessor in bad faith, the situation is different. Section 384 of our Civil Code (1930 ed.), equivalent to section 455 of the Spanish Code, provides that a possessor in bad faith must pay for the fruits collected and for those which a lawful possessor might have collected, and that he is only entitled to be reimbursed for the necessary expenses incurred in the preservation of the thing. The expenses incurred in the production, gathering, and preservation of the fruits are of a special nature and necessary, but not so for the preservation of the thing. Are the expenditures incurred in the production of fruits, which the owner eventually receives, reimbursable to the possessor in bad faith? Is it possible to harmonize the provisions of section 290 with those of section 384 of our Civil Code? Section 290 of the Civil Code (1930 ed.) provides that the person receiving the fruits has the obligation to pay the expenses incurred by a third person in the production, gathering, and preservation of such fruits, and section 384 grants the possessor in bad

faith only the right of reimbursement as to necessary expenses incurred in the preservation of the thing possessed. In spite of the severity with which the code penalizes the possession in bad faith, we do not believe that such rigor should be carried to the point of permitting the owner to enrich himself at the expense of the possessor. Sánchez Román, at page 459, vol. 3, of his treatise on the Civil Law, says:

"Notwithstanding the unqualified character of the provision in sec. 455 to the effect that a possessor in bad faith 'shall be entitled only to reimbursement for the necessary expenditures incurred for the preservation of the thing,' either because the penalty of not only failing to receive any fruits but also of bearing the expenses incidental to their production would be excessive for the possessor, and excessive, likewise, the benefit to the owner or lawful possessor to whom fruits were to be adjudicated free from any obligation to reimburse the expenditures which their production may have caused; or because it is indispensable to reconcile sec. 455 with sec. 356, which enacts the general rule, more just, that 'one who receives fruits is obliged to pay any expenses which may have been incurred by a third person in the production, gathering, and preservation thereof,' a fair solution of the question would seem to be, to hold that, since section 356 mentions only a *third person* without distinguishing one acting *bona fide* from another not so acting in defraying the expenses, sec. 455 should be construed on this point as unobnoxious or subordinate to sec. 356.

"It is unquestionable that such a construction would be more just and would obviate the arbitrary dissimilarity of concept apparent in the said sections, but we cannot overlook the definiteness of the provisions of sec. 455, the manifest *exclusive* meaning of the expression 'shall be entitled only' and, generally, the value of the adverb used therein and the preference enjoyed, under sound principles of statutory construction, by a special provision over a general one, particularly where, in addition, the former appears *after* the latter in the code."

Manresa in his Commentaries on the Civil Code, vol. 4, p. 281, says:

"Accordingly, sec. 356 provides in general that he who receives the fruits must compensate the expenses incurred by a third person

in their production, gathering, and preservation. Its terms are precise and applicable to rural as well as to urban properties, to movables including cattle, and whether possession or any other tenure may be involved. The receiver of the rents and profits pays these ordinary expenses which the law of the *Partidas* and the judgments of March 7, 1867, April 17, 1874, and November 5, 1881, considered as a necessary deduction from such fruits. The *bona fide* possessor receives the fruits, and the expenditures incidental to their production, gathering, and preservation are for his account. The possessor in bad faith has incurred expenses in the production of fruits which the owner will eventually receive; therefore, these expenses should be for the account of the receiver. It is of no avail to allege the bad faith, because, as Laurent says, sec. 356 has been enacted rather for the possessor in bad faith, truly a third person, than for any other occupant, and because no one should be allowed to enrich himself at the expense of another; and inasmuch as the owner receives the fruits it is just that he should compensate the expenses.

"Nor is the expression in sec. 455, 'the possessor in bad faith shall be entitled only to reimbursement for the necessary expenses incurred for the preservation of the thing,' an obstacle, because we have started from the assumption that the code does not advisedly refer in sections 451 and 455 to general production expenses, mindful of the rule enacted by sec. 356, and thus, inasmuch as it deals only with expenses which it designates as necessary, useful, or for mere pleasure, with reference to this alone and to no other special outlays, it provides that only necessary expenses are reimbursable to the possessor in bad faith. Further, it might still be argued that the expenditures for production, preservation, maintenance, etc., are necessary for the production of the thing."

Scaevola, at page 490, volume 8, of his Commentaries on the Spanish Civil Code, writes as follows:

"Thus we believe that the authors of the Civil Code reasoned, and so provided in sec. 455, that a possessor in bad faith must pay for the fruits collected and for those which the lawful possessor might have collected and shall only have the right to be reimbursed for necessary expenses incurred in the preservation of the thing.

"After this brief discussion we ask —would it be just, once the spirit of the provision is known, and the channels which the thought of the legislators pursued are determined, would it be just, we ask again, to contend that the possessor in bad faith is deprived of all

right to claim reimbursement for expenses incurred in the production, gathering, and preservation of the fruits?

"We do not think so. The just principle expressed in sec. 356 of the code is opposed to such a contention. Section 453 also militates against it, but, above all, the absurd thesis is contradicted by the spirit of the law, the command of equity, which notwithstanding deficiencies of expression and confusions of thought, vigorously rises to show with intense clarity what has been the wholesome intention of the legislator, not lucidly revealed in the concise text of the statute.

"The repression of bad faith is just, or even necessary; but it does not seem to us equitable or legal that the penalty inflicted upon the culprit should contribute to the unjust enrichment of the victorious litigant."

As above shown, these commentators unanimously agree that a just solution would be to construe section 455 as unobnoxious or subordinate to section 356, although Sánchez Román calls attention to the unqualified text of section 455 of the Spanish Civil Code. We are of opinion that the possessor in bad faith is entitled to a refund of the expenditures incurred in the production, gathering, and preservation of the thing possessed. We adhere to the views of Manresa and Scaevola, because we believe that sections 290 and 384 of our Civil Code should be reconciled so as to enable the ends of justice to be fulfilled, and because we consider that this construction is in harmony with the spirit of the law.

Accordingly, the plaintiffs must reimburse the amount paid for water consumed from April 4, 1923 to May 21, 1926, and from the date on which the defendants were summoned in the present action until the property is restored.

The sum of $255.83 also appears to have been paid by the defendants as premium on a fire insurance policy covering the buildings located on the property. The defendants allege in the first paragraph of the cross complaint, which has been admitted by the plaintiffs, that the latter, at the time that the mortgage was constituted, undertook to keep insured the buildings which stood on the mortgaged prem-

ises. Insurance cannot be considered as an improvement or as a necessary expenditure; but inasmuch as the insuring of the buildings benefits the owner exclusively, the possessor in good faith not being answerable for the loss of the thing and the possessor in bad faith being responsible for such loss, due to *vis major*, only where he has maliciously delayed the delivery of the thing to its lawful possessor, which has not occurred in this case, at least prior to the citation of the defendants in this suit, we shall respect the agreement made and accept the pronouncement of the lower court adjudging the plaintiffs to pay to the defendants the sum of $255.83 expended for the insurance of the buildings. We have said that insurance benefits the owner exclusively, because, assuming that no policy existed, the plaintiffs would not have been entitled to claim any indemnity for the loss in case the buildings had been destroyed by fire. The defendants, besides, have entered no objection to the court's pronouncement on this point.

As regards the $1,200.77 paid by the defendants for taxes, we have nothing to decide, the plaintiffs having confessed in their answer to the cross complaint the obligation to refund the amount of the taxes paid up to the date when the property is restored. With respect to the $14 paid by the defendants to the Proprietors' League and which, according to the defendant, Rafael Rivera Oyola, were expended for dispossession proceedings, we think that it should not be reimbursed by the plaintiffs.

Summarizing we hold that, for the reasons stated in this opinion, the following pronuncements should be made herein, adjudging and decreeing:

That the mortgage foreclosure proceeding instituted by Francisco Rivera Colón against Antonio Román Benítez is null and void, and that the defendants herein restore to the plaintiffs the property described in the complaint, together with the rents and profits thereof estimated at $60.00 monthly, accrued from April 4, 1923, to May 21, 1926, and from the

date on which the defendants were summoned in the action herein to the date of the restitution of the property; it being adjudged, further, that the property must be delivered free from the mortgage for $5,000 constituted in favor of Lorenzo Alois and, in default thereof, that deposit must be made beforehand with the plaintiffs of the amount of said mortgage and of any interest thereon due on the date of such restitution;

That the plaintiffs pay over to Francisca Rivera Gómez, as a condition precedent to the restitution of the property, the sum of $8,000, together with interest thereon at the rate of 12 per cent per annum, accrued since the last payment of the interest instalments by plaintiffs on March 28, 1922, to May 21, 1926, and from the date the defendants were summoned in the action herein to the date on which the property shall be restored to their lawful owners;

That the plaintiffs pay over to the defendants the sum of $1,200.77 expended by the latter for taxes, from the year 1923 to the year 1929;

That the plaintiffs reimburse to the defendants all amounts expended for water consumed on the property from April 4, 1923, to May 21, 1926, and from the date the defendants were summoned herein to the date of the restitution of the property;

That the plaintiffs reimburse to the defendants the sum of $255.83, expended for the insurance of the buildings which existed on the property;

That the plaintiffs pay over to the defendants the sum of $2,021.40 as the value of the improvements made on the property while the defendants held possession thereof in good faith, each party to pay its own costs.

The judgment appealed from must be modified in accordance with the terms of this opinion and, as so modified the judgment together with the remaining particulars thereof will be affirmed.